**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5490-17T1

ZION'ELIYAH YAH'TORAH,

     Appellant,

v.

NEW JERSEY DEPARTMENT
OF CORRECTIONS,

     Respondent.

_____

Submitted October 2, 2019 – Decided October 25, 2019

Before Judges Sumners and Natali.

On appeal from the New Jersey Department of Corrections.

Zion'Eliyah Yah'Torah, appellant pro se.

Gurbir S. Grewal, Attorney General, attorney for respondent (Jane C. Schuster, Assistant Attorney General, of counsel; Francis A. Raso, Deputy Attorney General, on the brief).

PER CURIAM

Appellant Zion'Eliyah Yah'Torah appeals from a May 21, 2018 final agency decision of the New Jersey Department of Corrections (NJDOC) that continued his designation as a high risk inmate. After considering the parties' arguments in light of the record on appeal and the applicable legal principles, we vacate and remand for further proceedings.

I.

Appellant is currently incarcerated at the New Jersey State Prison (NJSP) in Trenton and is serving a fifty-year sentence with a twenty-five year mandatory minimum term for carjacking, escape, assault against a law enforcement officer, burglary, conspiracy, and robbery. Many of these charges relate to appellant's escape attempt while detained in the Monmouth County Jail in 1999. During that incident, appellant scaled a fence, climbed over a wall, and stole a vehicle. When he was subsequently apprehended at his girlfriend's home, he resisted arrest on the roof of the house, where he choked a police officer and attempted to gain control of his service revolver.

After appellant entered a guilty plea, he was transferred to the custody of the NJDOC in November 2001. In light of his attempted escape and efforts to resist arrest and capture, the NJSP High Risk Inmate Designation Committee (HRIDC) concluded that appellant required increased security precautions and

A-5490-17T1

accordingly designated his custody status as "maximum" and classified him as a "high risk" inmate. For a number of years, appellant has unsuccessfully challenged both his high risk status as well as the NJDOC's maximum custody classification in order to effectuate a transfer to a less restrictive facility.

For example, on August 4, 2016, appellant expressed a desire to work as a teacher's assistant or in a position in the "[c]ookhouse" and sought a transfer to another facility if his request was denied. In response, on August 20, 2016, the NJDOC informed appellant that he was required to submit a job request form in writing to the housing unit officer. Nothing in the record establishes that appellant ever submitted the requested form.

On November 8, 2016, appellant sought "to be granted gang min[imum]" classification, which is a less restrictive classification than maximum custody.[1]

---

[1] N.J.A.C. 10A:9-4.1 identifies "six categories of custody status within the [NJDOC]: (1) Close custody; (2) Maximum custody; (3) Medium custody; (4) Gang minimum custody; (5) Full minimum custody; and (6) Community custody." See also Szemple v. Dep't of Corr., 384 N.J. Super. 245, 247 n.1 (App. Div. 2006). "Inmates classified as 'maximum custody status' shall be assigned to activities within the confines of the correctional facility under continuous supervision." N.J.A.C. 10A:9-4.3(b). Further, "[i]nmates classified as 'gang minimum custody status' may be assigned to activities or jobs which routinely require them to move outside the security perimeter of the correctional facility, but on the grounds of the facility and under continuous supervision of a custody staff member, civilian instructor or other employee authorized to supervise inmates. The time served in gang minimum custody status shall be at the

Appellant challenged the NJDOC's determination that his escape history disqualified him from gang minimum status, claiming that he should "no longer be san[c]tioned for a[n] [eighteen] year old escape." The NJDOC notified appellant that the NJSP does not house gang minimum inmates, and that "[a]ll inmates in general population are [maximum] or [medium] [c]ustody [s]tatus." Appellant did not appeal the NJDOC's November 8, 2016 decision.

The following year, on November 21, 2017, appellant again requested that the NJDOC change his custody status to "gang minimum." Appellant argued that his high risk designation was "holding [him] back" from a transfer to a facility that accepted inmates with a gang minimum custody designation. Appellant further argued that the NJDOC custody designation was inconsistent with N.J.A.C. 10A:9-4.6(o), which provides that "[i]nmates who have escaped . . . from a . . . county jail . . . shall be eligible [for gang or full minimum custody status] when five years have elapsed from the date of apprehension of the escape . . . ." Three days later, the NJDOC notified appellant that his case would be referred for review at the next committee meeting and that appellant had a "K-

---

discretion of the Institutional Classification Committee [(ICC)]." N.J.A.C. 10A:9-4.3(d).

7" override "based on the circumstances of [his] committing [the] offense."[2] Appellant did not file an appeal challenging the decision.

The next month, on December 27, 2017, appellant wrote a letter to the NJDOC Deputy Commissioner, alleging that the NJDOC was improperly continuing his high risk designation in order to prevent his transfer to another facility, and that it "failed to consider all of the [N.J.A.C. 10A:9-3.3(a)] factors pertinent to his status in making its decision . . . ." The same day, appellant sent two more inquiries about "the current reason" for his continued high risk designation and requested to be transferred to "Mid[-]State Prison." The NJDOC responded to appellant on January 3, 2018 and informed him that Mid-State Prison is a "treatment institution," and that he did not meet the criteria for a transfer which required a classification of medium custody and a prison term of fewer than ten years. Appellant did not appeal the decision.

---

[2] A K-7 override refers to a situation "when an inmate cannot be assigned to the recommended custody status indicated by [a] custody status score." N.J.A.C. 10A:9-2.14(a). In such circumstances, the ICC may apply an override code reflecting its reasoning for deviation. Ibid. Override code K-7 may be applied to assign an inmate "[m]edium custody status . . . or above" if the ICC reasonably believes "that the inmate will be unsuccessful in a lower custody status assignment . . . due to . . . [r]easons relating to the safe orderly operation of the [NJDOC] facility pursuant to N.J.A.C. 10A:9-3.3 . . . ." N.J.A.C. 10A:9-2.14(a)(12)(vii). In making a K-7 override determination, the ICC may consider an inmate's "[h]istory of escape, attempted escape[,] or propensity for escape." N.J.A.C. 10A:9-3.3(a)(17).

A-5490-17T1

On January 9, 2018, appellant sent another letter to the Deputy Commissioner, and on January 13, 2018, he sent a separate inquiry to the NJDOC, seeking removal of his high risk designation, requesting a transfer to another correctional institution, and asking for "the how, when[,] and why" he was classified a high risk inmate, as well as "a reason why [NJSP] . . . [was] using th[e] [h]igh [r]isk designation as an automatic preclusion or prevention against [him] from being transferred to another facility and why he [was] perpetually kept on a [K]-7 override."

On January 18, 2018, the NJDOC responded that appellant was "[h]igh [r]isk, as well as an [e]scape [r]isk[,] due to [his] documented escape [from] the Monmouth County Jail." On January 24, 2018, appellant asked if his K-7 override was "because of the [h]igh [r]isk." On February 5, 2018, the NJDOC informed appellant that his override "was due to [his] documented escape out of the Monmouth County Jail." Appellant appealed neither the January 18, 2018, nor the February 5, 2018 decision.

On April 16, 2018, appellant filed a grievance, demanding that his high risk designation be removed and that he receive "back pay for the work credits [he] would have earned on gang min[imum,] in the amount of [three thousand dollars] or something in that ball park." A month later, on May 21, 2018, the

6

NJDOC informed appellant that his status had been reviewed in January 2018, and that the high risk designation was not removed. This appeal followed from the NJDOC's May 21, 2018 final agency decision.

Appellant raises four primary arguments on appeal. First, he argues that his continued designation as a high risk inmate is arbitrary and capricious as it is contrary to the relevant administrative regulations, and the designation is made without the benefit of a hearing where he can attend and present evidence. Second, he maintains that the NJDOC improperly refused to transfer him to a less secure prison based on his high risk classification, and that his classification has negatively affected his ability to earn good-time credits and employment, contrary to his liberty interests as defined by the United States Supreme Court in Sandin v. Conner, 515 U.S. 472 (1995). Finally, appellant maintains that his high risk designation constitutes improper rulemaking, contrary to the New Jersey Administrative Procedure Act, N.J.S.A. 52:14B-1 to -31, and the record fails to contain substantial evidence to support the NJDOC's finding. We reject all of these arguments with the exception of appellant's claim that the NJDOC's decision was not supported by substantial evidence in the record and remand the matter for the NJDOC to explain and amplify its bases for maintaining appellant's high risk designation.

A-5490-17T1

II.

The scope of our review of an agency decision is limited. In re Taylor, 158 N.J. 644, 656 (1999). "An appellate court ordinarily will reverse the decision of an administrative agency only when the agency's decision is 'arbitrary, capricious or unreasonable or . . . is not supported by substantial credible evidence in the record as a whole.'" Ramirez v. Dep't of Corr., 382 N.J. Super. 18, 23 (App. Div. 2005) (quoting Henry v. Rahway State Prison, 81 N.J. 571, 579-80 (1980)). "'Substantial evidence' means 'such evidence as a reasonable mind might accept as adequate to support a conclusion.'" Figueroa v. N.J. Dep't of Corr., 414 N.J. Super. 186, 192 (App. Div. 2010) (quoting In re Pub. Serv. Elec. & Gas Co., 35 N.J. 358, 376 (1961)).

In accordance with administrative regulations, the NJDOC makes decisions on various matters, including "[a]ssignment of inmates to work, educational, vocational[,] and treatment programs[,] . . . [r]eview of inmate applications for change in custody status[,] . . . [and] [r]eview of inmate requests for transfer to other facilities" through the ICC, who apply specified criteria enumerated in N.J.A.C. 10A:9-3.3(a). N.J.A.C. 10A:9-3.1(a).

Generally, when deciding on an inmate's "transfers and assignments to housing; work, educational, vocational or treatment programs; custody status;

and residential community programs," the ICC considers the twenty-three enumerated factors in N.J.A.C. 10A:9-3.3(a). However, where the ICC reviews an inmate's request for a reduced custody status specifically, it considers the enumerated factors in N.J.A.C. 10A:9-4.5(a). One such factor is an "objective classification score," which is calculated by employing a reclassification instrument that assigns point values to objective criteria such as "[e]scape history during the previous five years of incarceration . . . ." N.J.A.C. 10A:9-2.6(b)(4).[3] The aggregate value of the criteria as applied to the inmate determines the ICC's custody status recommendation. N.J.A.C. 10A:9-2.6(a)(1)-(3). When the ICC determines that "an inmate cannot be assigned to the recommended custody status," it may apply an override code reflecting its reasoning. N.J.A.C. 10A:9-2.14(a).

### III.

With respect to appellant's first argument, he relies on N.J.A.C. 10A:9-4.6(o)(2) which, as noted, provides that "[i]nmates who have escaped or attempted to escape from a medium or higher security facility or county jail . . . shall be eligible [for gang or full minimum custody status] when five years have

---

[3] Point values are assigned to each of the criteria using defined scales based on the relevant circumstances in the inmate's record. N.J.A.C. 10A:9-2.8 to 2.13.

A-5490-17T1

elapsed from the date of apprehension . . . or from the date of the attempted escape."  He further claims that pursuant to Smith v. Dep't of Corr., 346 N.J. Super. 24, 31 (App. Div. 2001), "'custody status' decisions are made by the [ICC] 'pursuant to its consideration of a list of [twenty three] factors . . . [detailed in] N.J.A.C. 10A:9-3.3(a) . . . .'"  Appellant's argument is misplaced for two reasons.

First, under Rule 2:5-1(e)(3)(i), a "notice of appeal shall . . . designate the judgment, decision, action or rule, or part thereof appealed from . . . ."  Thus, "it is only the judgments or orders or parts thereof designated in the notice of appeal which are subject to the appeal process and review."  Pressler & Verniero, Current N.J. Court Rules, cmt. 6.1 on R. 2:5-1 (2019); see also Sikes v. Twp. of Rockaway, 269 N.J. Super. 463, 465-66 (App. Div. 1994); Campagna ex rel. Greco v. Am. Cyanamid Co., 337 N.J. Super. 530, 550 (App. Div. 2001).

Here, appellant's notice of appeal lists only the May 21, 2018 final agency decision which denied his request to remove his high risk designation. Appellant did not appeal any of the prior NJDOC decisions.  Significantly, the May 21, 2018 decision did not address his maximum security designation under N.J.A.C. 10A:9-4.1(a)(1)-(6), nor did it address his K-7 override or whether appellant should be reclassified as gang minimum status or full minimum custody status.  As the NJDOC's high risk designation is not an enumerated

10

custody status, and appellant has not appealed a final agency decision that adjudicated his custody status, appellant's reliance on N.J.A.C. 10A:9-4.6 and Smith is inapposite.

Second, appellant's high risk designation does not require a hearing consistent with Avant v. Clifford, 67 N.J. 496 (1975). As we concluded in Szemple, an inmate's high risk designation "merely subjects him to increased security in the form of additional prison guards in attendance when he is escorted from the prison. That heightened scrutiny is not 'atypical and significant' and does not require that appellant be afforded a hearing as to its propriety." Szemple, 384 N.J. Super. at 251.

IV.

Relying on Sandin, appellant next maintains that the NJDOC's refusal has to transfer him to a less secure prison based on his high risk designation has adversely limited his employment opportunities and his ability to earn good time credits, thereby triggering his liberty interests and attendant due process protections. Again, we disagree.

In Sandin, the United States Supreme Court clearly held that an inmate does not have a constitutionally protected liberty interest in his or her placement by a state's penal authority. Sandin, 515 U.S. at 480. Rather, due process

safeguards are only required when a change in an inmate's custody status "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 484. And, in Muhammad v. Balicki, 327 N.J. Super. 369, 372 (App. Div. 2000), we observed that although the "'atypical and significant hardship' standard of Sandin may be difficult to define . . . it is clear . . . that the loss of enjoyment of greater mobility than that accorded to the general prison population, less supervision[,] and eligibility for more good-time credits do not fall within that standard . . . ." Id. at 372-73 (citation omitted); see also Shabazz v. N.J. Dep't of Corr., 385 N.J. Super. 117, 123 (App. Div. 2006) (finding that an inmate has no protected liberty interest in being placed in a halfway house).

Appellant has failed to establish on the current record that the NJDOC's high risk designation, generally or specifically, constitutes "atypical and significant hardship." Appellant's high risk designation is the precise classification that we held did not constitute an atypical and significant hardship in Szemple. See Szemple, 384 N.J. Super. at 251. Further, under Balicki, appellant has no protected liberty interest in either good time credits or less restrictive supervision. See Balicki, 327 N.J. Super. at 372-73.

12

Additionally, there is no support in the record that the NJDOC denied appellant appropriate work opportunities as a result of his high risk designation. Rather, on August 4, 2016, appellant expressed a desire to work as a teacher's assistant, or in a position in the "[c]ookhouse," and the NJDOC informed him that he was required to submit a job request form in writing to the housing unit officer. There is no evidence in the record that appellant submitted the required job request form, and he never appealed the August 4, 2016 decision.

V.

Finally, appellant claims that the NJDOC's high risk policy constitutes improper rulemaking in violation of the APA. He further argues that the NJDOC did not comply with "the statutory requirements of the APA governing the adoption of agency rules" and, further, it used "a '[h]igh [r]isk' designation in a manner to withhold [appellant] from being transferred to a prison that he can receive gang . . . minimum status." We disagree.

Initially, we note that appellant has not included in the record on appeal a copy of the policy that he maintains constitutes improper rulemaking and we could reject his challenge to the NJDOC high risk policy on that basis alone. He does, however, acknowledge the existence of such a policy. Indeed, in his appendix, he references "Standard Operati[ng] [Procedure] [No.] 437," which

13

allegedly "sets forth the purpose of the '[h]igh [r]isk' designation" and includes procedures that the NJDOC staff should follow relating to high risk placement, as well as "factors to be consid[e]red" in designating an inmate as high risk. We accordingly glean from the record and the parties' arguments the existence of the policy and the fact that the HRIDC applies the operating procedure in determining whether or not to designate an inmate as high risk.

"The APA defines an administrative rule as an agency's 'statement of general applicability and continuing effect that implements or interprets law or policy, or describes the organization, procedure[,] or practice requirements' of the agency." In re Authorization for Freshwater Wetlands Statewide Gen. Permit 6, 433 N.J. Super. 385, 413 (App. Div. 2013) (quoting N.J.S.A. 52:14B-2(e)). The New Jersey Supreme Court has identified six factors to assess whether an agency engaged in improper rulemaking contrary to the APA's requirements. Metromedia, Inc. v. Dir., Div. of Taxation, 97 N.J. 313, 331-32 (1984).

In accordance with Metromedia, a court should examine if the agency decision:

> (1) is intended to have wide coverage encompassing a large segment of the regulated or general public, rather than an individual or a narrow select group; (2) is intended to be applied generally and uniformly to all

similarly situated persons; (3) is designed to operate . . . prospectively; (4) prescribes a legal standard or directive that is not otherwise expressly provided by or clearly and obviously inferable from the enabling statutory authorization; (5) reflects an administrative policy that (i) was not previously expressed in any official and explicit agency determination, adjudication or rule, or (ii) constitutes a material and significant change from a clear, past agency position on the identical subject matter; and (6) reflects a decision on administrative regulatory policy in the nature of the interpretation of law or general policy.

[Ibid.]

In Grimes v. N.J. Dep't of Corr., 452 N.J. Super. 396 (App. Div. 2017), we applied the Metromedia factors and determined that a NJDOC policy that prohibited inmates from making phone calls to "cellular, business[,] or non-traditional telephone service numbers" constituted improper rulemaking. Id. at 399, 406. In that case, we concluded that the policy "applie[d] to all inmates in correctional facilities and to their relatives and friends," was a "blanket policy with no exceptions . . . applied 'generally and uniformly to all similarly situated persons,'" and "necessarily operate[d] 'prospectively.'" Id. at 405 (quoting Metromedia, 97 N.J. at 331-32). Moreover, we found that based on "[t]he absence of any mention of cell phones or types of service" in an earlier NJDOC handbook and "the prohibition of calls on that basis" in a later handbook, the NJDOC policy suggests "a new restriction not inferable on any basis other than"

15

the NJDOC's discretion.  Ibid.  Finally, since the policy created a "significant impact on members of the public" in that the people affected outside the facility "could equal, and potentially significantly exceed" the affected inmates, we concluded that the policy was not exempt from the APA as a statement of "internal management or discipline."  Id. at 407 (quoting N.J.S.A. 52:14B-2).

Here, based on the record before us, we cannot conclude that the NJDOC's high risk policy constitutes improper rulemaking.  First, it appears undisputed that the high risk policy addresses enhanced transportation security for specific inmates who have an escape history, among other factors unique to an inmate that the HRIDC is charged with considering.  Therefore, on the current record, we cannot determine that it is "intended to . . . [encompass] a large segment of the regulated or general public" or "applied generally and uniformly to all similarly situated persons . . . ."  Metromedia, 97 N.J. at 331; see also Szemple, 384 N.J. Super. at 251.  Second, appellant has not shown a "material and significant change" from past agency policy.

Further, based on appellant's description of Standard Operating Procedure No. 437, it would be exempt from promulgation, as the APA's definition of an administrative rule explicitly "does not include . . . statements concerning internal management or discipline of any agency . . . ."  N.J.S.A. 52:14B-2.  In

sum, unlike the telephone policy in Grimes, the high risk policy here appears to affect only those designated and is intended to ensure the "custody, care, [and] discipline" of inmates in preventing further escapes which could cause harm to staff, inmates, or the escapee themselves.  N.J.S.A. 30:1B-3; see also Grimes, 452 N.J. Super. at 407.

VI.

However, we conclude that because the NJDOC has failed to explain adequately the bases for its decision to maintain appellant's high risk designation, a remand is appropriate to permit the NJDOC to amplify its final decision.  In this regard, the NJDOC's determination appears to rely solely upon appellant's "documented escape out of the Monmouth County Jail" in 1999. Indeed, the only evidence contained in the record from the HRIDC supporting appellant's high risk designation is dated April 1, 2008, which refers to his "[e]scape [out of] Monmouth [County] Jail – 1999."  We cannot determine from the record, however, if the NJDOC or the HRIDC considered appellant's claim that as of 2016, he had "remained charge free" and that as of 2017, "[had] [zero] points" on the objective classification score which takes into consideration, among other factors, escape history.

A-5490-17T1

Accordingly, we vacate the May 21, 2018 final agency decision and remand for further proceedings to permit the NJDOC to explain and amplify its reasoning for its decision to maintain appellant's high risk designation. On remand, the NJDOC should identify the relevant operating procedure or policy it relies upon and detail the bases for maintaining appellant's high risk status. If the NJDOC bases its decision exclusively on appellant's conviction related to his escape from the Monmouth County Jail in 1999, or if it relied on other aspects of his disciplinary record, it should clearly so indicate. Nothing in our decision should be interpreted as expressing our view on the result of the remanded proceedings.

To the extent we have not addressed any of appellant's arguments, it is because we conclude they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(D), (E).

Vacated and remanded for further proceedings. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5490-17T1