**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4889-17T1

ARTHUR MONTAGUE,

     Appellant,

v.

NEW JERSEY DEPARTMENT
OF CORRECTIONS,

     Respondent.

_____

Submitted October 7, 2019 – Decided October 25, 2019

Before Judges Sabatino and Natali.

On appeal from the New Jersey Department of Corrections.

Arthur Montague, appellant pro se.

Gurbir S. Grewal, Attorney General, attorney for respondent (Melissa H. Raksa, Assistant Attorney General, of counsel; Suzanne Marie Davies, Deputy Attorney General, on the brief).

PER CURIAM

Appellant Arthur Montague appeals from a May 22, 2018 final agency decision of the New Jersey Department of Corrections (NJDOC) that continued his designation as a high risk inmate. After considering the parties' arguments in light of the record on appeal and the applicable legal principles, we vacate and remand for further proceedings.

I.

Appellant is currently incarcerated at New Jersey State Prison (NJSP) in Trenton. On January 2, 2014, he was discovered with "two . . . homemade handcuff keys sewn into the cuff of his thermal undershirt" while he was being processed for a court appearance. As a result, the NJDOC found appellant guilty of prohibited acts *.803, "attempting to commit, aiding another person to commit or making plans to commit any Category A and or B offense," and *.102, "attempting or planning escape," contrary to N.J.A.C. 10A:4-4.1. In addition, the NJDOC High Risk Inmate Designation Committee (HRIDC) designated appellant as a high risk inmate.

From November 2017 through March 2018, appellant sought removal of his high risk designation to effectuate a transfer from Trenton to East Jersey State Prison (EJSP) in Rahway to be closer to his family, and to participate in rehabilitative programs. The NJDOC informed appellant that a meeting

regarding his high risk designation would "take place at the end of January [2018]." On March 4, 2018, NJDOC notified appellant that his designation was "reviewed by the . . . Committee and the decision notices [would] be sent out by institutional mail." There is nothing in the record detailing the results of the HRIDC's review as it relates to appellant's requests.

On May 3, 2018, appellant filed a grievance pursuant to N.J.A.C. 10A:1-4.5, challenging his continued high risk designation on the grounds that the NJDOC's high risk policy was not promulgated as a regulation under the Administrative Procedure Act (APA), N.J.S.A. 52:14B-1 to -31. The next day, Major Craig Sears informed appellant that he would "remain on [h]igh [r]isk status until deemed otherwise by a committee." Sears further advised appellant that he was still classified as high risk because he "repeatedly assaulted correctional staff and [had] attempted escape . . . [by] alter[ing] clothing and . . . possess[ing] implements to escape."

Appellant responded to Sears on May 17, 2018, and stated that he never "assault[ed] [any] correctional staff . . . and it [was] not on [his] record, [and neither were] any other assaults . . . ." Further, appellant restated his claim that the NJDOC's high risk policy required promulgation under the APA because (1) the policy "applie[d] to all inmates in correctional facilities"; (2) the policy [had]

A-4889-17T1

no exceptions; (3) the policy "could not possibly [have been] applied to reach back in time"; (4) "the [Committee's] restriction [was] not inferable on any basis other than the breadth of the Commissioner's discretion to operate the correctional facility"; and (5) "the [high risk policy] . . . involve[d] an exercise of the Commissioner's discretion and expertise."  Five days later, on May 22, 2018, Assistant Superintendent Amy Emrich, according to the NJDOC, "upheld the decision," and informed appellant that his case would be "routinely reviewed by the [Committee] and given consideration . . . [and he would] be notified via institutional mail of the decision rendered."[1]  This appeal followed.

Appellant raises two primary arguments on appeal.  First, he maintains that the NJDOC policy that classifies an inmate as high risk constitutes improper rulemaking, contrary to the APA and, thus, his designation as a high risk inmate is unenforceable.  Second, he argues that the NJDOC's May 22, 2018 decision was not supported by substantial credible evidence in the record because he never "assaulted correctional staff."

---

[1] Emrich's May 22, 2018 communication did not clearly state that appellant's administrative appeal was denied.  For finality purposes, however, we accept NJDOC's representation in its merits brief that she denied appellant's administrative appeal.

Initially, we note that in his reply brief, appellant also asserts that: 1) the NJDOC improperly refused to transfer him to a less secure prison based on his high risk classification, and his classification has negatively affected his desire to transfer to EJSP and participate in certain programs, contrary to his liberty interests as defined by the United States Supreme Court in Sandin v. Conner, 515 U.S. 472 (1995); and 2) the NJDOC arbitrarily and capriciously designated him a high risk inmate by denying his request for an administrative hearing to "confront, challenge, and present any evidence [as to] why he should or should not be placed on [or removed from] [h]igh [r]isk." We do not consider these arguments as they are improperly raised for the first time in a reply brief. See State v. Smith, 55 N.J. 476, 488 (1970) (declining to consider a reply brief argument "enlarg[ing] on [defendant's] main argument and attack[ing] an additional evidential ruling of minor nature"); Bacon v. N.J. Dep't of Educ., 443 N.J. Super. 24, 38 (App. Div. 2015) ("By failing to raise their original jurisdiction argument in their initial brief, plaintiffs have waived this contention.").

We note, however, that in Szemple v. Dep't of Corr., 384 N.J. Super. 245 (App. Div. 2006), we held that a high risk designation, which "merely subject[s] [an inmate] to increased security in the form of additional prison guards . . .

when he is escorted from the prison" does not constitute the type of "atypical and significant" scrutiny that triggers an inmate's liberty interest and requires a hearing. Id. at 251.

Further, no decision from the NJDOC Institutional Classification Committee (ICC), which possesses the requisite authority to effectuate inmate transfers and program assignments, is before us and nothing in the record establishes that appellant sought to effectuate a transfer through the ICC.[2] Rather, the May 22, 2018 final decision addressed only the HRIDC's decision to maintain appellant as a high risk inmate. Finally, as detailed infra at pp. 10-13, we are remanding the matter for the NJDOC to more thoroughly explain and amplify its bases for maintaining appellant's high risk designation.

## II.

The scope of our review of an agency decision is limited. In re Taylor, 158 N.J. 644, 656 (1999). "An appellate court ordinarily will reverse the decision of an administrative agency only when the agency's decision is 'arbitrary, capricious or unreasonable or . . . is not supported by substantial

_____

[2] The ICC, among its other responsibilities, assigns "inmates to work, educational, vocational[,] and treatment programs[,] . . . [r]eview[s] . . . inmate applications for change in custody status[,] . . . [and] [r]eview[s] . . . inmate requests for transfer to other facilities . . . ." N.J.A.C. 10A:9-3.1(a).

A-4889-17T1

credible evidence in the record as a whole.'" Ramirez v. Dep't of Corr., 382 N.J. Super. 18, 23 (App. Div. 2005) (quoting Henry v. Rahway State Prison, 81 N.J. 571, 579-80 (1980)). "'Substantial evidence' means 'such evidence as a reasonable mind might accept as adequate to support a conclusion.'" Figueroa v. N.J. Dep't of Corr., 414 N.J. Super. 186, 192 (App. Div. 2010) (quoting In re Pub. Serv. Elec. & Gas Co., 35 N.J. 358, 376 (1961)).

III.

With respect to appellant's first point, we initially note that he has not included in the record on appeal an actual copy of the policy that he maintains constitutes improper rulemaking, and we could reject appellant's first argument on that basis alone. He does, however, acknowledge the existence of such a policy. Indeed, in appellant's appendix, he provides a January 24, 2008 memorandum from the Deputy Attorney General referencing "Standard Operati[ng] [Procedure] [No.] 437," which allegedly "sets forth the purpose of the [h]igh [r]isk designation" and includes procedures that the NJDOC staff should follow relating to high risk placement, as well as "factors to be considered" in designating an inmate as high risk. We accordingly glean from the record and the parties' arguments the existence of the policy and the fact that

7

the HRIDC applies the operating procedure in determining whether or not to designate an inmate as high risk.

"The APA defines an administrative rule as an agency's 'statement of general applicability and continuing effect that implements or interprets law or policy, or describes the organization, procedure or practice requirements' of the agency." In re Authorization for Freshwater Wetlands Statewide Gen. Permit 6, 433 N.J. Super. 385, 413 (App. Div. 2013) (quoting N.J.S.A. 52:14B-2(e)). The New Jersey Supreme Court has identified six factors to assess whether an agency engaged in improper rulemaking contrary to the APA's requirements. Metromedia, Inc. v. Dir., Div. of Taxation, 97 N.J. 313, 331-32 (1984).

In accordance with Metromedia, a court should examine if the policy:

> (1) is intended to have wide coverage encompassing a large segment of the regulated or general public, rather than an individual or a narrow select group; (2) is intended to be applied generally and uniformly to all similarly situated persons; (3) is designed to operate . . . prospectively; (4) prescribes a legal standard or directive that is not otherwise expressly provided by or clearly and obviously inferable from the enabling statutory authorization; (5) reflects an administrative policy that (i) was not previously expressed in any official and explicit agency determination, adjudication or rule, or (ii) constitutes a material and significant change from a clear, past agency position on the identical subject matter; and (6) reflects a decision on administrative regulatory policy in the nature of the interpretation of law or general policy.

A-4889-17T1

[Ibid.]

In Grimes v. N.J. Dep't of Corr., 452 N.J. Super. 396 (App. Div. 2017), we applied the Metromedia factors and determined that a NJDOC policy that prohibited inmates from making phone calls to "cellular, business[,] or non-traditional telephone service numbers" constituted improper rulemaking. Id. at 399, 406. In that case, we concluded that the policy "applie[d] to all inmates in correctional facilities and to their relatives and friends," was a "blanket policy with no exceptions . . . applied 'generally and uniformly to all similarly situated persons,'" and "necessarily operate[d] 'prospectively.'" Id. at 405 (quoting Metromedia, 97 N.J. at 331-32). Moreover, we found that based on "[t]he absence of any mention of cell phones or types of service" in an earlier NJDOC handbook and "the prohibition of calls on that basis" in a later handbook, the NJDOC policy suggests "a new restriction not inferable on any basis other than" the NJDOC's discretion. Ibid. Finally, since the policy created a "significant impact on members of the public" in that the people affected outside the facility "could equal, and potentially significantly exceed" the affected inmates, we concluded that the policy was not exempt from the APA as a statement of "internal management or discipline." Id. at 407 (quoting N.J.S.A. 52:14B-2).

Here, based on the record before us, we cannot conclude that the NJDOC's high risk policy constitutes improper rulemaking. First, it appears undisputed that the high risk policy addresses enhanced transportation security for specific inmates who have an escape history, among other factors unique to an inmate that the HRIDC is charged with considering. Therefore, on the current record, we cannot conclude that it is "intended to . . . [encompass] a large segment of the regulated or general public" or "applied generally and uniformly to all similarly situated persons . . . ." Metromedia, 97 N.J. at 331; see also Szemple, 384 N.J. Super. at 251. Second, appellant has not shown a "material and significant change" from past agency policy.

Further, based on the description of Standard Operating Procedure No. 437, it would be exempt from promulgation, as the APA's definition of an administrative rule explicitly "does not include . . . statements concerning internal management or discipline of any agency . . . ." N.J.S.A. 52:14B-2. In sum, unlike the telephone policy in Grimes, the high risk policy here appears to affect only those designated and is intended to ensure the "custody, care, [and] discipline" of inmates in preventing further escapes which could cause harm to staff, inmates, or the escapee themselves. N.J.S.A. 30:1B-3; see also Grimes, 452 N.J. Super. at 407.

A-4889-17T1

IV.

Appellant next maintains that the NJDOC's decision to maintain his high risk designation was not based on substantial credible evidence, as there is no support in the record for Sears' statement that appellant "repeatedly assaulted correctional staff." We agree.

After appellant disputed Sears' basis for his May 4, 2018 decision, Sears never responded and, as noted, the record contains no evidence to support a finding that appellant "repeatedly assaulted correctional staff," one of two bases Sears relied on to support NJDOC's high risk designation. Rather, the NJDOC progress notes in the record state that appellant was found guilty after hearings of prohibited acts *.005, "threatening another with bodily harm or with any offense against his or her person or his or her property," .709, "failure to comply with a written rule or regulation of the correctional facility," and .256, "refusing to obey an order of any staff member." N.J.A.C. 10A:4-4.1.

We cannot glean from those guilty findings, however, if the charges relate to an assault on a correctional officer, and we note that appellant was not charged with either prohibited act *.002, "assaulting any person," or .013, "unauthorized physical contact with any person, such as, but not limited to, physical contact not initiated by a staff member." The only evidence of appellant's charges in the

record are the aforementioned NJDOC progress notes which contain no information regarding the underlying factual bases for the offenses.

Accordingly, we vacate the May 22, 2018 final agency decision and remand for further proceedings to permit the NJDOC to explain and amplify the bases for its decision to maintain appellant's high risk designation. On remand, the NJDOC should confirm the relevant operating procedure or policy the HRIDC relies upon and it should detail its reasons for maintaining appellant's high risk status. If the NJDOC based its decision, in whole or in part, on appellant's alleged assault of a correctional officer, it should identify the incident, whether charges were filed, the result of any hearing, and the weight it ascribed to the incident, as well as any other factor, when it made its high risk designation. Conversely, if the NJDOC bases its decision on appellant's convictions for the *.803 and *.102 offenses exclusively, or in combination with other aspects of his disciplinary record, it should clearly so indicate. Nothing in our decision should be interpreted as expressing our view on the result of the remanded proceedings.

Further, our opinion does not foreclose appellant from challenging subsequent HRIDC or ICC decisions that specifically address his high risk designation, custody status, requests to transfer to a different facility, or requests

to engage in certain rehabilitative programs. Our opinion addresses only the May 22, 2018 final agency decision with regard to his high risk designation.

To the extent we have not addressed any of appellant's arguments, it is because we conclude they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(D), (E).

Vacated and remanded for further proceedings. We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION